**In re JEWISH HOSPITAL AND MEDICAL CENTER OF BROOKLYN, Debtor.**

**JEWISH HOSPITAL AND MEDICAL CENTER OF BROOKLYN, Plaintiff,**

**v.**

**The PEOPLE OF the STATE OF NEW YORK, New York State Department of Social Services and New York State Office of Health Systems Management, Defendants.**

**Bankruptcy No. 79–B–355(CBD).**

United States Bankruptcy Court, E.D. New York.

Aug. 31, 1988.

Strook & Strook & Lavan, New York City by Arthur N. Ohringer, for debtor.

Robert Abrams, Atty. Gen. of State of N.Y., New York City by Stephen M. Jacoby, for defendants.

Jules Teitlebaum, New York City by Gary Ginsburg, for Creditors' Committee.

### DECISION

CONRAD B. DUBERSTEIN, Chief Judge.

This adversary proceeding was commenced by the debtor, Jewish Hospital and Medical Center of Brooklyn ("JHMCB"), against the State of New York ("State") for approximately $2.9 million of rendered medical services pursuant to a post-petition agreement ("Agreement"). The court

or believed that the debtor would incur debts beyond its ability to pay as they matured, 11 U.S.C. § 548(a)(2)(B)(iii).

finds that a provision within the Agreement, shortening the New York statute of limitations period, is reasonable and dismisses the adversary proceeding.

## FACTS

The facts are undisputed. JHMCB filed a petition for an arrangement on February 8, 1979, pursuant to Chapter XI of the Bankruptcy Act of 1898, and continued in business and in possession of its property pursuant to court order. At that time it was a not-for-profit corporation which owned and operated a hospital in Brooklyn, New York. On December 31, 1982 it ceased hospital operations, leasing the premises to Interfaith Medical Center.

Prior to filing its bankruptcy petition and shortly thereafter, JHMCB participated in the Medicaid program. Under the Medicaid program maintained by the State under federal auspices, the New York Department of Social Services ("DSS") paid the Medicaid providers, including JHMCB, only after the medical services and audits were performed. If a Medicaid patient received treatment at JHMCB, JHMCB then submitted a bill to the State, which would then audit it. If the services were within the federal and state statutory schemes, the State would then pay JHMCB the statutory amount for the past services. JHMCB admitted in its memorandum of points and authorities that the Medicaid "audits normally lagged years behind the on account payments." *Id.* at 4. Such a schedule caused a cash-flow problem, one of the admitted reasons JHMCB filed its Chapter XI bankruptcy petition.

The record reflects that the State went to heroic, extraordinary measures to keep JHMCB operating. During the post-petition until November 1979, the State's Office of Health Systems Management ("OHSM") developed and submitted to the United States Department of Health and Human Services ("DHH") a proposal styled "A Reimbursement Demonstration Program for an Improved Health Care System in the Bedford–Stuyvesant/Crown Heights Communities" ("Demonstration Program") concerning the delivery of health care to medically under-served communities in New York. On November 28, 1979, DHH, OHSM and DSS approved of JHMCB and DSS signing an agreement regarding the Demonstration Program. With the approval of my predecessor, the Honorable Joseph V. Costa, and pursuant to his order dated November 29, 1979, both DSS and JHMCB, by their respective counsel, entered into the agreement on December 13, 1979. JHMCB concedes it had little negotiating power inasmuch as it was in great need of immediate cash to satisfy its payroll, and that DSS offered the Agreement on a "take it or leave it basis." Tr. at 44–45. The Agreement required that JHMCB comply with several conditions, which for purposes of this opinion were all satisfied.

In return for its compliance, JHMCB received $90 million, over three years broken down into weekly payments, for $93 million of audited services it rendered. In this adversary proceeding JHMCB seeks the difference being the amount it received and the amount of the audited services. Thus unlike the previous Medicaid arrangement with the State, JHMCB received weekly payments contemporaneously with services, instead of being paid long after the medical services were performed.

The initial term of the Agreement was for approximately one year, terminating December 31, 1980. However, JHMCB exercised two one-year extensions contained within the Agreement. Additionally, there were several amendments to the Agreement, one of which provided the Demonstration Project would ultimately terminate on May 9, 1983.

The Agreement, at page 7 paragraph D, contained the following limitation:

> No action shall lie or be maintained against the State, or any agency or employee thereof, upon any claim based upon this agreement or out of any other cause of action arising out of the terms hereof or anything done in connection herewith unless such action shall be commenced within one year of the termination of this agreement or such claim be filed within six months after the accrual of such claim whichever is earlier.

One year from the ultimate termination of the Agreement was March 9, 1984. JHMCB filed its complaint on August 26, 1986.

The State moved for summary judgment dismissing the complaint in the adversary proceeding pursuant to Bankruptcy Rule 7056. For the reasons hereinafter set forth, the motion is granted and the complaint is dismissed.

## DISCUSSION

The State argues the provision limiting the statute of limitations period in the Demonstration Project agreement bars JHMCB's suit.

Inasmuch as the contract, entered into between the parties, is governed by the law of the State of New York, this court looks to it for guidance. The New York Civil Practice Laws and Rules provides:

> An action ... must be commenced within the time specified in this article unless a different time is prescribed by law or a shorter time is prescribed by written agreement.

N.Y.Civ.Prac.L. & R. § 201 (McKinney 1972). Courts have enforced reasonable agreements limiting the statute of limitations periods. *E.g., John J. Kassner & Co. v. City of New York,* 46 N.Y.2d 544, 550–51, 415 N.Y.S.2d 785, 789, 389 N.E.2d 99, 103 (1979) (dicta); *Planet Constr. Corp. v. Bd. of Educ. of the City of New York,* 7 N.Y.2d 381, 385, 198 N.Y.S.2d 68, 72, 165 N.E.2d 758, 760 (1960).

At issue is whether the contractual provision is reasonable for it to be enforceable. *Wayne Drilling & Blasting, Inc. v. Felix Indus., Inc.,* 129 A.D.2d 633, 514 N.Y.S.2d 114 (2d Dept. 1987), which involved a subcontractor's action against its contractor, stated: "Absent proof that the contract is one of adhesion or the product of overreaching, or that [the] altered period is unreasonably short, the abbreviated period of limitations will be enforced...." *Id.* at 634, 514 N.Y.S.2d at 115 (quoting *Timberline Elec. Supply Corp. v. Insurance Co. of North Am.,)* 72 A.D.2d 905, 906, 421 N.Y.S.2d 987, 988 (4th Dept.1979), *aff'd,* 52 N.Y.2d 793, 436 N.Y.S.2d 707, 417 N.E.2d 1248 (1980) (suretyship contract). Another case, *Brown & Guenther v. North Queensview Homes, Inc.,* 18 A.D.2d 327, 239 N.Y.S.2d 482 (1st Dept.1963), involved an architect's motion to stay arbitration in which the Appellate Division struck down the 15 day period to file such a motion, stated that "consideration should be given to all the provisions of the contract, the circumstances of its performance and the relative abilities and bargaining positions of the parties. From all of these a conclusion may be reached as to whether the limited time is unconscionable, unfair, unreasonable and therefore unenforceable." *Id.* at 329–30, 239 N.Y.S.2d at 484.

The court finds the Agreement's provision limiting the time when an action could be commenced to be reasonable. JHMCB was a legally sophisticated entity, along with its counsel. A consumer case of an adhesion or an unconscionable contract is not present. JHMCB had long dealt with the State in the Medicaid program and knew, or should have known, prior to entering into the Agreement that the State would not finish its auditing procedure prior to the one year period after the agreement had terminated.

While this agreement was offered to JHMCB on a "take it or leave it" basis, it was not compelled to accept the agreement. JHMCB had over two weeks from when Judge Costa permitted it to enter into the Agreement until it signed the Agreement. Evidently, JHMCB opined the Agreement's benefits were greater than the detriments when it was signed, when it was extended twice and when it was amended many times. Although there were amendments, the clause restricting time to commence an action continually remained intact. Hindsight seconded JHMCB's opinion of the anticipated benefits; JHMCB, with cash-flow problems, contemporaneously received $90 million for $93 million of services, or a 96.7% return.

Accordingly, since the Agreement's provision is reasonable, the State's motion of summary judgment is granted dismissing JHMCB's complaint and motions contingent upon the success of the complaint.

Submit an order consistent with this opinion.